```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

CRAIG T., Jr.,

                              Plaintiff,

v.                                                                                                         1:20-CV-0973
                                                                                                              (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>ELIZABETH HAUNGS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ANDREEA LECHLEITNER, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 16.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.        RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1990. (T. 69.) He completed the 10th grade. (T. 186.) Generally, Plaintiff's alleged disability consists of epilepsy/seizures, fatigue, and headaches. (T. 71.) His alleged disability onset date is April 19, 2017. (T. 69.) His past relevant work consists of housekeeping/laundry. (T. 22.)

### B. Procedural History

On May 11, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 69.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 15, 2019, Plaintiff appeared before the ALJ, Paul Gregor. (T. 37-68.) On August 2, 2019 a supplemental hearing was held at which Plaintiff did not personally appear but was represented by counsel. (T. 29-36.) On August 29, 2019, ALJ Gregor issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-28.) On May 27, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-23.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 11, 2017. (T. 17.) Second, the ALJ found Plaintiff had the severe impairment of epileptic seizure disorder. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18.) Fourth, the

ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: no exposure to unprotected heights or moving mechanical parts, no operation of a motor vehicle and frequent reaching in all directions with the left arm.  (T. 19.)  Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 22-23.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ failed to properly evaluate Plaintiff's subjective complaints.  (Dkt. No. 13 at 6-9.)  Plaintiff also filed a reply in which he relies on his original briefing.  (Dkt. No. 15.)

### B.   Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ's RFC finding was supported by substantial evidence and reasonably did not include a limitation in maintaining a schedule.  (Dkt. No. 14 at 5-16.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

Plaintiff argues the ALJ failed to discuss "observed post seizure symptoms" and supporting evidence in the record that his post seizure symptoms interfere with his ability to maintain a regular schedule.  (Dkt. No. 13 at 6-9.)  Plaintiff argues this error was harmful because the inability to maintain a schedule, even for one day during the probationary period, would render him disabled.  (*Id*.)

In formulating an RFC, the ALJ must take Plaintiff's subjective complaints of pain and limitations into account; however, the ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the

credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir.2010) (internal citations omitted).

In evaluating Plaintiff's symptoms and subjective complaint of pain, the ALJ must employ a two-step analysis.  *See* 20 C.F.R. § 416.929[1].  First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. § 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

---

[1]  On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017.  Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*, 20 C.F.R. § 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017; *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, Plaintiff filed his claim after March 27, 2017.  Thus, the 2017 revisions apply to this case.

Here, the ALJ concluded Plaintiff's medically determinable impairment could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 19.)

To be sure, as stated by Plaintiff, the ALJ did not specifically discuss notations from a March 2017 emergency room visit observing symptoms which "may be a Todd's paralysis." (Dkt. No. 13 at 8; T. 265.)  However, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)).

Further, although the ALJ did not specifically note observations of potential "Todd's paralysis," the ALJ did discuss emergency treatment received in March 2017. (T. 20.)  The ALJ noted Plaintiff reported to the provider he had not taken his medication for two days.  (*Id*.)  Indeed, the provider noted Plaintiff "most likely [had] a breakthrough seizure due to medication noncompliance" and there was "no other recent illness to induce a metabolic abnormality for cause of seizure." (T. 266.)

During his March 2017 emergency room visit a provider described Plaintiff's symptoms as "some very minor left-sided facial droop and tongue deviation to the right" and "minor weakness in left upper extremity." (*Id*.)  At re-evaluation two hours later, the provider noted Plaintiff's symptoms were completely resolved.  (T. 266.)  Such objective observations undermine Plaintiff's testimony that symptoms from his seizure can last for days.  (T. 52.)

In addition, the provider's notation concerning possible "Todd's paralysis," relied, in part, on Plaintiff's own subjective complaints. The provider noted Plaintiff "says he often has left-sided symptoms similar to this after a seizure." (T. 265.) However, the record does not contain any other complaints of left-sided paralysis or suggestion of Todd's paralysis. Therefore, Plaintiff's assertion that this one-time observation of "possible" Todd's paralysis supports a finding that Plaintiff cannot maintain a regular schedule, fails.

In making his determination, the ALJ also reviewed Plaintiff's treatment notes and found they were inconsistent with Plaintiff's subjective complaints. (T. 20-21.) Indeed, despite observations of some post-seizure symptoms, such symptoms resolved within hours, not days, and there were no additional observations of paralysis. Plaintiff sought emergency room treatment in July 2016 complaining of a seizure. (T. 326.) Plaintiff reported he "may have" missed a "few doses" of his seizure medication. (*Id*.) Plaintiff stated he woke up "confused and sweaty" with a headache, which resolved. (*Id*.) On examination, the provider observed Plaintiff was "sweating [and] slightly lethargic." (T. 327.) The provider further observed Plaintiff was in no apparent distress, his extremities had normal range of motion, he had a normal gait, normal speech, and full strength and sensation in his extremities. (*Id*.) At re-evaluation three hours later, Plaintiff reported feeling improved and his mental status had returned to baseline. (T. 329.) Plaintiff again reported to the emergency room in July 2017 after having a seizure. (T. 349.) He reported he did not take his seizure medication. (*Id*.) He stated he woke up "nauseous and tired" and that is how he feels after a seizure. (*Id*.) On

examination the provider noted Plaintiff was awake, alert, and in no acute distress.  (T. 350.)

In addition to emergency room treatment observations, the ALJ relied on objective observations by medical examiners in the record.  On July 24, 2017, Plaintiff underwent a consultative examination by David Brauer, M.D.  (T. 275-277.)  Plaintiff reported to Dr. Brauer he only experienced seizures at night and typically had two per month.  (T. 275.)  However, Plaintiff did not report to Dr. Brauer any symptoms other than often biting his tongue.  (*Id.*)  Dr. Brauer opined Plaintiff had no exertional limitations.  (T. 277.)  On January 25, 2018, Plaintiff saw Robert Glover, M.D., a neurologist, for an initial evaluation and admitted that he had "spotty" medication compliance, that he had a seizure only about once per month, that his seizures were "[e]xclusively nocturnal," and that their frequency lessened when he adhered to his prescription medication regimen (T. 20-21, 285-287.)  Plaintiff did not tell Dr. Glover that after a seizure, he felt nauseous, confused, or tired.  (T. 285.)  While he reported that he lost some jobs in the past, he stated that his job losses were related to "seizures [and] marijuana."  (*Id*.)  The ALJ properly concluded the medical opinion evidence in the record did not support Plaintiff's subjective complaints of disabling symptoms.

In assessing Plaintiff's subjective complaints, the ALJ properly relied on Plaintiff's daily activities, which he concluded did not support the alleged degree of disabling symptoms.  (T. 20-21.)  Plaintiff reported he was able to cook, clean, do laundry, go shopping, shower, dress, and watch television.  (*Id*.)  Plaintiff stated there were no household chores he could not do.  (T. 54.)  Plaintiff was able to shop, care for his cat, and occasionally go out with his three-year-old and three-month-old.  (T. 55.)  At his

hearing Plaintiff testified he was able to take public transportation.  (T. 45.)  Therefore, the ALJ properly determined Plaintiff's ability to perform a range of daily activities did not support Plaintiff's reports of disabling symptoms.  *See Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d Cir. 2020) (ALJ determination regarding plaintiff's subjective complaints was supported by plaintiff's testimony that he can perform basic daily tasks, such as dressing himself and grocery shopping).

Considering the deferential standard of review and the ALJ's thorough assessment of Plaintiff's subjective complaints in light of the evidence in the record, the ALJ did not err in finding the limitations described by Plaintiff did not fully match the medical records provided.  *Snyder v. Saul*, 840 F. App'x 641, 644 (2d Cir. 2021) (relying on *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (describing a reviewing court's role as deferring to the ALJ's resolution of conflicting evidence)); *see Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (the ALJ's credibility determination merits deference).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     May 25, 2021

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge